UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 10-2629(DSD/TNL)

Esther Ruth Brown,

       Plaintiff,

v.                                                    **ORDER**

Michael Chiappetta and
City of Minneapolis,

       Defendants.


    Joshua R. Williams, Esq., Law Office of Joshua R. Williams, PLLC, 2701 University Avenue S.E., Suite 209, Minneapolis, MN 55414, counsel for plaintiff.

    C. Lynne Fundingsland, Esq., Amanda M. Trelstad, Esq. and Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, counsel for defendants.


    This matter is before the court upon the motion for partial summary judgment by plaintiff Esther Ruth Brown and motion for summary judgment by defendants Michael Chiappetta and City of Minneapolis. The court heard oral argument on May 27, 2011. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants defendants' motion.


## BACKGROUND

    This civil rights dispute arises out of the arrest and detention of Brown following an alleged drive-by shooting in Minneapolis, Minnesota in August 2009.

## I.    Initial Investigation and Reports

On August 27, 2009, at 4:46 p.m. Derrick Charleston called 911 and reported that Brown had fired three shots at him from the passenger seat of a green Pontiac near the corner of 36th Avenue North and Penn Avenue North.   Minutes later Minneapolis Police Officer Anna Hedberg arrived and questioned Charleston.   Charleston stated that he knew Brown because he had lived with her and she recently kicked him out after an argument concerning his girlfriend, Drucilla Pickens.   Chiappetta Aff. Ex. 1, at 8; see Brown Dep. 8:22–10:3.   Charleston said that Brown fired three shots at him from the passenger seat of a dark green car with twenty-inch silver rims.   Chiappetta Aff. Ex. 1, at 8.   He said that the vehicle belonged to Brown.   Id.   An independent witness, Patricia Knapp, approached Hedberg and said that she heard three shots fired from a dark green vehicle, but that she could not see the shooter because the vehicle had tinted windows.   Id.   Hedberg searched the area and found three spent 9-mm shell casings.   Id.

Hedberg recognized Charleston as a suspect in the burglary of Brown's home on August 26, 2009, during which a 9-mm Taurus handgun was allegedly stolen.[1]   Id.   Hedberg handcuffed Charleston and placed him in her squad car.   Id.   Charleston told Hedberg that he had neither burglarized Brown's house nor stolen a handgun.   Id.

---

[1] On August 26, 2009, Brown reported that Charleston had burglarized her home and had stolen jewelry and her 9-mm handgun.

Rather, Charleston said that he had returned only to recover his property.  Id.  Hedberg released Charleston, and instructed him to contact the precinct the next day.  Id.

Meanwhile, Officers Kasso and Griffin saw Brown and two of her friends, Yenestra Shockency and Derrica Randle in a green GMC Jimmy near Brown's house.  Id. at 10-11.  Griffin stopped the vehicle and arrested Brown.  Id.  Kasso reported that she heard Shockency say, "[t]his must be because of the shooting" and "[t]his must be because of the gun."  Id. at 11.

Chiappetta was assigned to investigate the incident.  Officers Hedberg, Griffin and Yasso each wrote supplemental reports on August 27.  Chiappetta wrote a supplemental report on August 28.  Chiappetta's report noted largely the same information as the reports of Hedberg, Griffin and Yasso, but added that Shockency had been contacted "but would not confirm that she was present during the time of the shooting" and that Randle "also stated that she was with Brown from 3 [p.m.] to the time of her arrest but denied a shooting had taken place."  Id. at 13.  Chiappetta stated that "[b]oth known witnesses that had been contacted are believed to be providing false information at this time."  Id.

## II.  Criminal Complaint

On August 28, 2009, an assistant county attorney filed a complaint against Brown in Minnesota state court.  The complaint stated:

3

Complainant, Sgt. Michael Chiappetta, of the Minneapolis Police Department, has investigated the facts and circumstances of this offense and believes that the following establishes probable cause:

On August 27, 2009, at about 4:49 p.m., police spoke with [Derrick Charleston], a 19 year old male.  He stated that he had been at 36th Street and Penn Ave. North in Minneapolis, Hennepin County, when a green Buick [sic] Grand Prix with 20" silver rim tires approached.  A woman he recognized as ESTHER RUTH BROWN, the Defendant herein, reached out the right passenger window and fired a handgun three times in his direction.

Officer Hedberg, who spoke with [Charleston], was also approached by a woman, [Knapp], who stated that she heard three shots coming from a dark green vehicle which had dark tinted windows.  Officer Hedberg searched the area where the car had reportedly been when the shots were fired.  The officer located three 9-mm shell casings on the north side of 36th, just north of Penn Ave.  These were photographed and recovered.

Officer Griffin reports that on August 27, 2009, at about 5:48 p.m., he and Officer Kasso located a vehicle matching the description given by the witnesses.  Officer Kasso reports that the driver appeared to attempt to evade the squad.  The defendant BROWN was seated in the front passenger seat.  The car contained two other women.  One of them, [Shockency] stated *This must be because of the shooting.*"  [Shockency] later stated, "*This must be because of the gun.*"

Officer Hedberg reports that the day before this drive-by shooting the defendant BROWN had made a police report claiming that her "godson," [Charleston], had re-entered her home without consent and had taken items, including her 9-mm Taurus semi-automatic handgun.

4

Williams Decl. Ex. C, at 1, ECF No. 30-1, at 27.

The judge found probable cause and set bail at $100,000.[2]  Id.
at 3.  Brown remained in pretrial detention until Shockency and two
others posted a $3,000 bond on September 26, 2009.  Brown was
released.  The case proceeded to trial in April 2010.  A week or
two before trial, Brown's defense attorney failed to show up for a
meeting with the prosecutor and Chiappetta to discuss disclosures.
Chiappetta Aff. Ex. 4, at 88:19-89:9, 95:4-96:16.  On the morning
of trial a discovery dispute arose, and Brown argued that the City
had failed to disclose exculpatory evidence.  The judge held a pre-
trial hearing.

## III.  Pretrial Hearing

Chiappetta was the only person who testified at the hearing.
Brown's defense counsel and the assistant county attorney
questioned Chiappetta.

### A.    Shockency and Randle

Chiappetta said that he spoke to Shockency on August 28, and
that she "denied making the statement" about the gun at the time
Kasso and Griffin stopped the car.  Chiappetta Aff. Ex. 4, at
11:5-8.  Chiappetta said that he told the prosecutor about the
conversation, but could not recall the exact date or time.  Id. at
16:14-18.  Chiappetta also confirmed that he spoke to Randle on
August 28, and that Randle told him that she had been with Brown

---

[2] According to Brown bail was $50,000.  Brown Dep. 27:22:23.

since 3:00 p.m. on August 27.  Id. at 27:25–28:4.  Randle also confirmed several other facts, none of which were relevant.  Id. at 38:21–25.

### B.   Pickens and Charleston

Chiappetta talked to Pickens about her relationship with Charleston and Brown, and confirmed Charleston's story that there was no burglary on August 26.  Id. at 45:16–18, 46:2–11. Chiappetta did not discuss the shooting with Pickens.  Id. at 45:22–46:1.  He talked to Charleston before taking his recorded statement.  Chiappetta also talked to Charleston after the statement to confirm some facts about the alleged burglary and handgun.  Id. at 62:11–25.

### C.   Kris Brown

Chiappetta also spoke with Kris Brown, who cares for Brown's adult son.  Kris Brown told Chiappetta that she had been with Brown when she bought the 9-mm handgun.  Id. at 69:4–17.  Detective Brian McKague also spoke with Kris Brown in November 2009.  Trelstad Ex. 7, at 1.  Kris Brown told McKague that "she has seen Esther [Brown] driving by the house and on one occasion Esther [Brown] parked in front of the house and pointed a gun at Kris through the window." Id. at 2.

### D.   Firearm Evidence

Chiappetta also said that the same gun was used in a separate shooting in October 2009.  Id. at 75:10–18; Pl's Mem. Supp. 6.

Chiappetta told the prosecutor about the second shooting a week before trial.  Chiappetta Ex. 4, at 75:13-19.  Chiappetta stated that he did not see bullet holes at the scene of the alleged shooting.

At the end of the hearing Brown moved to dismiss the charges. The state court dismissed the complaint as a sanction for the City's failure to disclose.

On June 25, 2010, Brown sued defendants under 42 U.S.C. § 1983, claiming that they deprived her of Fourth and Fourteenth Amendment rights to liberty and due process.[3]  Brown also claims numerous state statutory and common law violations, including intentional infliction of emotional distress and negligent infliction of emotional distress.  Brown moves for partial summary judgment as to liability under § 1983 and defendants move for summary judgment on all claims.[4]

## DISCUSSION

### I.   State Criminal Proceeding

Brown bases much of her argument on the order of the state court judge dismissing the criminal case.  The dismissal is

---

[3] Brown amended her complaint on February 4, 2011.

[4] At oral argument, Brown abandoned her claims against the City and her state claims against Chiappetta for malicious prosecution, false arrest and false imprisonment.  Therefore, the court dismisses those claims.  See Fed. R. Civ. P. 41(a)(2).

significant to the instant action, however the issues in the criminal case are distinct from this action.  For example, Chiappetta had no interest in the outcome of the criminal proceeding.  Moreover, the decision of the judge to dismiss the criminal complaint bears only on the acts of the prosecutor, and Chiappetta appeared as an uninterested witness, not an adversary.  Therefore, the outcome of the state criminal proceeding does not establish § 1983 liability for Chiappetta, and the reasons for sanctions are of little analytical value here.

## II.  Qualified Immunity

"The doctrine of qualified immunity protects [police] officers from personal liability under § 1983 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'"  Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)).  The court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the

benefit of all reasonable inferences." White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (citation omitted).

To determine whether an official is entitled to qualified immunity the court views the facts in the light most favorable to the plaintiff and considers (1) whether the alleged facts demonstrate that the official's conduct violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury. See id. "If the answer to either question is no, then [the official] is entitled to qualified immunity." Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010); see Callahan, 129 S. Ct. at 818.

## III.  Fourth Amendment[5]

"The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Police officers may act on "facts leading sensibly to their conclusions of probability." Id. at 112.  "Requiring more would unduly hamper law enforcement.  To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Id. (citation omitted).

---

[5] At oral argument, the court asked Brown's counsel to clarify whether she were abandoning her claim under the Fourth Amendment. Counsel's answer suggested that she was.  The court addresses the claim, however because it remained unclear whether Brown persisted in this claim.

In the present case the City presented substantial evidence in support of probable cause: a victim's statement identifying Brown as the shooter, an independent witness report corroborating the victim's statement and shell casings found at the scene consistent with the statement.  A judge found probable cause.  The alleged omissions would not change that outcome.  The inclusion of Shockency's denial or Randle's statement that she was with Brown the day of the shooting at best would create a question of credibility.  Given the totality of the evidence, these statements do not seriously call into question the existence of probable cause.  Therefore, Brown's claim that her arrest and detention violated the Fourth Amendment fails, and summary judgment is warranted.  See Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 818 (8th Cir. 2010) ("If the officers had probable cause, the arrests did not violate the Fourth Amendment and the officers are not liable." (citation omitted)).[6]

## IV.  Fourteenth Amendment

### A.  Brady v. Maryland

Due process requires prosecutors to disclose favorable evidence that is material to the guilt or punishment of a defendant.  See Brady v. Maryland, 373 U.S. 83, 87 (1963).

---

[6] Moreover, Chiappetta was not an arresting officer.

"Brady's protections also extend to actions of other law enforcement officers such as investigating officers." White, 519 F.3d at 814.

The Eighth Circuit has never extended Brady beyond trial. See United States v. Tyndall, 521 F.3d 877, 881 (8th Cir. 2008) ("The evidence is not material and no prejudice can be shown unless there is a reasonable probability that the *verdict* would have been different if the evidence had not been suppressed." (emphasis added)); White, 519 F.3d at 814 ("[T]he recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor intended to deprive the defendant of *a fair trial*." (emphasis added) (quoting Villasana v. Wilhoit 368 F.3d 976, 980 (8th Cir. 2004)); Evans v. Janing, 489 F.2d 470, 474 (8th Cir. 1973) ("Unlike the exclusionary rule of Mapp and Miranda, the duty of disclosure enunciated in Brady v. Maryland is designed to assure the fundamental *right to a fair trial* rather than penalize law enforcement officers for conduct encroaching upon an accused's constitutional rights.") (emphasis added)). Indeed, the Eighth Circuit recently confirmed that "Brady does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to *use it at trial*." Jeanpierre, 636 F.3d at 422 (emphasis added) (citation omitted).

Other courts of appeals agree. See United States v. Moussaoui, 591 F.3d 263, 285 (4th Cir. 2010) ("The Brady right, however, is a *trial* right."); Jean v. Collins, 221 F.3d 656, 663 (4th Cir. 2000) (en banc) ("A Brady violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary, but not a sufficient, condition for § 1983 liability on the part of the police."); Morgan v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."); Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir. 1998) (finding no Brady violation due to acquittal); McCune v. City of Grand Rapids, 842 F.2d 903, 907 (6th Cir. 1988) (finding civil plaintiff in month-long pretrial detention could not bring disclosure claim due to lack of criminal trial).

Brown argues that the court should expand Brady into the probable-cause and release-determination phase of an investigation. A probable cause hearing and pretrial detention are not the same as a trial and conviction. Arrest probable cause requires only facts and circumstances that support the reasonable belief that a suspect committed an offense. See Gerstein, 420 U.S. at 111. Conviction requires proof beyond a reasonable doubt. "That difference, together with uncertainties in what the evidence will show, implies that some innocent persons will be prosecuted." Buckley v.

12

<u>Fitzsimmons</u>, 919 F.2d 1230, 1233 (7th Cir. 1990), <u>rev'd on other</u> <u>grounds</u>, 502 U.S. 801 (1991).

As a result, "[p]ersons may be detained on evidence less than necessary to prove guilt beyond a reasonable doubt '(b)ecause many situations which confront officers in the course of executing their duties are more or less ambiguous' and 'room must be allowed for some mistakes on their part.'" <u>Campbell v. McGruder</u>, 580 F.2d 521, 529 n.14 (D.C. Cir. 1978) (alteration in original) (quoting <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949)); <u>see</u> <u>Mays v.</u> <u>City of Dayton</u>, 134 F.3d 809, 816 (6th Cir. 1998) (finding disclosure less compelling at probable cause stage than trial due to less-severe consequences). The court does not suggest that pretrial detention, further investigation and the threat of prosecution are de minimis. The consequences are significant. But they do not carry the same opprobrium and stigma of a criminal conviction. <u>Reno v. Am. Civil Liberties Union</u>, 521 U.S. 844, 872 (1997).

In the present case, there was no trial. All charges against Brown were dismissed. This case presents no reason to expand the trial rights of <u>Brady</u> into the early phases of an investigation. Therefore, the facts fail to show that Chiappetta violated Brown's due process rights, and summary judgment is warranted.[7]

---

[7] Although the court is not aware of a case in which the Eighth Circuit expanded <u>Brady</u> beyond trial, it has never expressly
(continued...)

Even if the Brady disclosure right were unconnected to trial and applied at the probable-cause stage, police officers have no absolute duty to disclose.  "[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) (citation omitted).  The Due Process Clause does not "demand[] an open file policy" and the government retains a "degree of discretion." Id. at 437.  However, an investigating officer violates the duty to disclose when he acts in bad faith. White, 519 F.3d at 814; accord Jones v. City of Chicago, 856 F.2d 985, 990, 995 (7th Cir. 1988).  The bad-faith requirement serves to avoid "imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58 (1988).  Thus to show a due process violation for failure to disclose, Brown would need to show that (1) Chiappetta failed to disclose evidence favorable to Brown, (2) the evidence was material and (3) Chiappetta acted in bad faith. Cf. Jeanpierre, 636 F.3d at 422; White, 519 F.3d at 814. Evidence is material when it "might have affected the outcome of the trial." United States v. Bagley, 473 U.S. 667, 674-75 (1985) (quoting United States v. Agurs, 427 U.S. 97, 104 (1976).

---

[7](...continued)
declined to expand Brady.  As a result, the court also analyzes the instant motion under Brady.

Chiappetta first argues that Brown has not shown that he failed to disclose favorable evidence or that the evidence was material. The court agrees. The evidence that the same gun used in the August 27 incident was used again after Brown was released from detention is, if anything, inculpatory. There is no evidence that any of Chiappetta's discussions with Pickens or unrecorded discussions with Charleston involved any exculpatory evidence. If anything, their statements could show that Brown filed the burglary complaint out of anger towards Charleston. Chiappetta's failure to observe bullet holes is not evidence of anything, especially in light of the witness statements and shell casings.

The only possibly exculpatory evidence is Shockency's denial of the spontaneous utterance and Randle's denial of the shooting. Chiappetta disclosed Randle's denial and, at best, Shockency's denial created an issue of credibility between Shockency and the arresting officers. Even resolving such credibility dispute in favor of Brown, the victim's statement, his identification of Brown, the corroborating statement by an independent witness and the presence of shell casings are substantial evidence to support probable cause. Additional disclosure would not have changed the probable-cause determination. Therefore, Brown fails to show that the undisclosed evidence was material at the probable cause stage.

Moreover, a determination that probable cause existed to believe that Brown committed assault does not inform the custody

15

determination.  A judge setting terms of release "must consider" numerous factors:

> a) the nature and circumstances of the offense charged; (b) the weight of the evidence; (c) family ties; (d) employment; (e) financial resources; (f) character and mental condition; (g) length of residence in the community; (h) criminal convictions; (i) prior history of appearing in court; (j) prior flight to avoid prosecution; (k) the victim's safety; (l) any other person's safety; (m) the community's safety.

Minn. R. Cr. P. 6.02 subdiv. 2.  The weight of the evidence is only one of many factors the judge must consider.  Nothing in the record supports an inference that the judge set bail based on the complaint or that the additional facts would have led to a different outcome.  Therefore, Brown also fails to show that the undisclosed evidence was material to the judge's determination of the amount of bail.

Chiappetta next argues that his actions were not in bad faith.  Courts have found bad faith when investigating officers have an interest in the investigation, lie or manufacture evidence.  See White, 519 F.3d at 811, 814 (investigating officer lied about ongoing romantic relationship with accuser's mother, violated department rules regarding victim contact and failed to preserve victim's diary that called accused "a good father" who she "wanted to spend more time bonding with at the family's lake house"); Livers v. Schenck, No. 08-107, 2011 WL 1197464, at *3, *7-8 (D. Neb. Mar. 28, 2011) (investigating officers fabricated evidence,

prepared false reports, tampered with evidence, coerced confession
and suppressed recanted confession by developmentally disabled
plaintiff accused of capital murder); accord Jones, 856 F.2d at
990, 995 (investigating officers manufactured false identification,
falsified witness statements and victim identification of another
person as assailant, suppressed report by another investigator and
used clandestine files of exculpatory information leading to
"railroading" of accused).  Chiappetta's failure to record largely
immaterial, neutral facts stands in stark contrast to those cases
involving bad faith.

An investigating officer need not assiduously record every
word of every conversation in the early stages of an investigation.
See Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta,
467 U.S. 479, 488-89 & 489 n.8 (1984); Jones, 856 F.2d at 995.
Instead, due process requires police to preserve and disclose
evidence that could exonerate a defendant.  See Youngblood, 488
U.S. at 58.  Chiappetta's initial suspicion that Shockency was
lying to him was reasonable and formed the basis for further
investigation.  His report noted that he had spoken with Shockency.
Her denial does not exonerate Brown.  Chiappetta disclosed the
statement of Randle that she had been with Brown and denied that
Brown was involved in the shooting.  Therefore, Brown does not show
that Chiappetta acted in bad faith, and summary judgment is
warranted.

In short, Brown fails to show that Chiappetta violated her due process right to disclosure because she never stood trial. Moreover, Chiappetta's acts were not in bad faith and Brown does not show that the disputed evidence is favorable or material under Brady. Therefore, for each of these reasons, Chiappetta is entitled to qualified immunity under § 1983.

Qualified immunity is also warranted because the right to disclosure, as interpreted by Brown, was not clearly established at the time. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." White, 519 F.3d at 813. The Eighth Circuit has never extended Brady beyond trial. The parties do not present any case in which a court of appeals extended Brady beyond trial. A reasonable officer could not have known that disclosing Shockency's inconsistent statement to the prosecutor before trial but not during the initial investigation would violate Brown's due process rights. For this additional reason, Chiappetta is entitled to qualified immunity.

**B.   Malicious Prosecution and Reckless Investigation**

The Eighth Circuit has recognized a cause of action for reckless investigation under the Due Process Clause. Amarine v. Brooks, 522 F.3d 823, 833–34 (8th Cir. 2008). To prevail on a claim for reckless investigation, a plaintiff must show that an officer's actions "shock the conscience." Id. at 833 (citation

18

omitted).  Gross negligence is not enough.  Id.  Brown also appears to assert a general claim of malicious prosecution under either the Fourth or Fourteenth Amendments.   The court applies the same substantive due process standard to Brown's § 1983 malicious prosecution claim as her reckless investigation claim.[8]  Nothing in the record approaches the standard of conscious shocking.  The acts alleged occurred in the first hours of the investigation. Chiappetta disclosed his potentially material interviews with Shockency and Randle.  Further, the court has already determined that the evidence supported probable cause, with or without Shockency's subsequent denial.  See Smith v. Almada, 640 F.3d 931, 938, 944 (9th Cir. 2011) ("Probable cause is an absolute defense to [§ 1983 claim of] malicious prosecution." (citation omitted).  In short, the most that can be said about Chiappetta's actions is that his record keeping was sloppy.  His actions led to judicial sanctions in the form of dismissal of the criminal case against Brown.  Those same acts do not violate substantive due process. Therefore, summary judgment is warranted.

---

[8]  The court notes that the Supreme Court has held that "pretrial deprivations of liberty" are properly analyzed under the Fourth Amendment.  See Albright v. Oliver, 510 U.S. 266, 274 (1994).  The court has already determined that even if the disputed evidence were included, the record supports the finding of probable cause by the state-court judge.  As a result Brown's claims also fail under the Fourth Amendment.

**V.    State Law Claims**

    **A.    Supplemental Jurisdiction**

    Having determined that summary judgment is warranted on Brown's federal claims, the court must determine whether to dismiss or exercise supplemental jurisdiction over Brown's state-law claims. See 28 U.S.C. § 1367(a); McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009) ("[P]ursuant to 28 U.S.C. § 1367, courts have the discretion to exercise supplemental jurisdiction over remaining state-law claims even after the district court has dismissed all claims over which it has original jurisdiction.") (citation and internal quotation marks omitted). Because Brown's federal and state claims derive from the same facts, deciding both claims in one proceeding promotes judicial efficiency. See OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007) (finding exercise of supplemental jurisdiction appropriate when claims would ordinarily be expected to be tried in one proceeding).

    **B.    Intentional Infliction of Emotional Distress**

    To establish intentional infliction of emotional distress, Brown must demonstrate four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003) (citation omitted). Conduct that is extreme and

20

outrageous "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 439 (Minn. 1983) (citation and internal quotation marks omitted).  Brown does not show that Chiappetta caused severe emotional distress.  The record shows that Brown has a long history of depression and was treated for depression before and after her arrest.  See Trelstad Aff. Exs. 2, 6.  Further, she cannot establish the first two elements.  No evidence before the court supports a finding that Chiappetta's actions were "extreme and outrageous."  Therefore, summary judgment is warranted on this claim.

### C.  Negligent Infliction of Emotional Distress

To prevail on a claim of negligent infliction of emotional distress Brown must prove that Chiappetta owed her a duty of care, breached that duty, the breach caused her injury, she was within the zone of danger of physical impact, she reasonably feared for her safety and she consequently suffered severe emotional distress with attendant physical manifestations.  See Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005).  The "physical injury or symptom requirement ... is a judicial obstacle designed to insure a plaintiff's claim is real."  Quill v. Trans World Airlines, Inc., 361 N.W.2d 438, 443 (Minn. Ct. App. 1985) (citation omitted).  Brown's weight and hair loss, depression, sense of betrayal and stress are not sufficiently severe to meet the

physical manifestation requirement.  See Leaon v. Washington Cnty., 397 N.W.2d 867, 875 (Minn. 1986) (holding that lost weight, depression and feelings of anger, fear, and bitterness do not satisfy physical manifestations test).  Moreover, Brown fails to show that she was in a zone of danger that led her reasonably to fear for her own safety.  Contrary to Brown's conclusory statement, jail is not an "inherently unsafe place."  Therefore, summary judgment is warranted on this claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.  Defendants' motion for summary judgment [ECF 31] is granted; and

2.  Plaintiff's motion for partial summary judgment [ECF 12] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 23, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court

22